## STATE OF CONNECTICUT *v.* ALLEN ADGERS
## (AC 26408)

Gruendel, Rogers and Peters, Js.

---

Argued February 23—officially released May 8, 2007

*Brendon P. Levesque*, special public defender, with whom were *Daniel J. Krisch* and, on the brief, *Michael S. Taylor*, for the appellant (defendant).

*Julia K. Conlin*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Mark Brodsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PETERS, J. Pursuant to General Statutes § 53a-183 (a) (2), a person is guilty of harassment in the second

degree if "with intent to harass, annoy or alarm another person, he communicates with a person by . . . mail . . . in a manner likely to cause annoyance or alarm." In this case, the defendant challenges the sufficiency of the evidence to establish that he violated this statute by mailing letters containing civil pleadings to his former wife while he was incarcerated for having kidnapped and assaulted her. Alternatively, he claims that, if his conduct is held to fall within the ambit of the statute, the statute is unconstitutionally vague. Because we are not persuaded by either contention, we affirm the judgment of the trial court.

On January 16, 2003, the state filed an information charging the defendant, Allen Adgers, with nine counts of harassment in the second degree in violation of § 53a-183 (a) (2). After a jury trial, the defendant was convicted of eight counts and acquitted of one count.[1] In response to a second information filed February 1, 2005, a jury subsequently found the defendant guilty of being a persistent offender in violation of General Statutes § 53a-40d. The trial court sentenced him to a total effective term of forty-eight months to be served consecutively to the prior sentence that had been imposed for his conviction of first degree kidnapping, sexual assault in a spousal relationship and assault in the second degree.

The jury reasonably could have found the following facts. The victim and the defendant separated in March, 2000, after having gotten married a year earlier. Thereafter, on May 8, 2000, the defendant cut the victim with a razor blade, but she was able to escape further injury. A year later, on June 12, 2001, the defendant kidnapped the victim and assaulted her both physically and sexually. On May 31, 2001, after pleading nolo contendere

---

[1] The jury found the defendant guilty with respect to exhibit seven, a letter containing a motion for immediate judgment by default in the defendant's civil action against the victim.

to the latter charges, the defendant was sentenced to twenty-five years in prison, suspended after thirteen years, and ten years of probation with the condition that he have no contact with the victim. At the sentencing hearing, the defendant accused the victim of having set him up and of destroying his family.

Both before and after his conviction, the defendant sent mail to the victim although she had no desire to communicate with him. The victim recognized his handwriting on these mailings. After the defendant had begun serving his sentence, he filed a civil action against the victim in which he charged her with having broken a mutual covenant not to say anything bad against each other. Relying on the advice of a court clerk, the victim filed a pro se appearance in this lawsuit but turned over to the Hartford state's attorney's office most of the documents relating thereto that she received from the defendant. To avoid prison censorship, the defendant had sent documents relating to his civil action in envelopes labeled "legal mail" or "court mail." The documents were sent to the victim at her home address in envelopes that, in most instances, bore additional writing such as a biblical reference or the words "You mislead me . . . over parties and drinking" or "Life number five gone cause your drinking." According to the victim, these mailings annoyed and alarmed her.

The defendant did not deny sending these mailings but emphasized his right to file civil pleadings[2] and denied that he had intended to annoy or alarm the victim. In his view, the victim was behaving vengefully

---

[2] Because the victim did not respond to the defendant's civil suit except by entering her appearance, the defendant obtained a default judgment against her. Thereafter, however, the trial court, *Beach, J.*, declined to award damages to the defendant. The court held that an agreement not to disparage another violates public policy because, if enforced under the circumstances of this case, it would place a monetary penalty on a person's reporting a crime.

because he had caused her to be charged with child welfare fraud.

I

The crux of the defendant's appellate claim on insufficiency of the evidence is that, because his mailings concerned civil pleadings,[3] the state failed to establish that his communications to the victim would cause annoyance or alarm to "a person of common intelligence." (Internal quotation marks omitted.) *State* v. *Murphy*, 254 Conn. 561, 574 n.24, 757 A.2d 1125 (2000). Although the defendant emphasizes that the mailings must be viewed "objectively" and "in their entirety," he acknowledges that it was proper for the jury to take account of "the underlying history between the parties." Indeed, in *State* v. *Lewtan*, 5 Conn. App. 79, 84, 497 A.2d 60 (1985), this court held that a jury considering the response of "a person of common intelligence" may receive evidence of the particular circumstances surrounding a particular communication. See also *State* v. *Snyder*, 40 Conn. App. 544, 552, 672 A.2d 535 (applicability of § 53a-183 [a] [2] depends on effect on "the intended victim"), cert. denied, 237 Conn. 921, 676 A.2d 1375 (1996), on appeal after remand, 49 Conn. App. 617, 717 A.2d 240 (1998).

Our standard of review of the defendant's claim is well established. "[P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable

[3] In this appeal, the defendant has challenged the validity of his conviction only with respect to mailings that contained civil pleadings. Thus, he is not contesting the propriety of his conviction with respect to exhibits six and nine, which contained photocopied pictures and the obituary of the defendant's father.

view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Murphy*, supra, 254 Conn. 575–76.

The defendant's appeal challenges the sufficiency of the evidence of harassment with respect to six of the nine communications that he mailed to the victim between March 21 and December 17, 2002. The victim testified that she found each of these communications annoying and alarming. The jury heard that the previous May, at the defendant's sentencing for having kidnapped and assaulted the victim, the defendant had accused her of being "a prideful woman" whose conduct had "destroyed his family."

A centerpiece of the defendant's claim of insufficiency of the evidence is his contention that his mailings to the victim could not reasonably be found to have annoyed or alarmed her because they contained legal pleadings. The defendant relies on case law holding that, as a general rule, communications uttered or published in the course of judicial proceedings are absolutely privileged as long as they are pertinent to the subject of the controversy. See *Petyan* v. *Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986); *Dlugokecki* v. *Vieira*, 98 Conn. App. 252, 256, 907 A.2d 1269, cert. denied, 280 Conn. 951, 912 A.2d 483 (2006); see also 3 Restatement (Second), Torts § 586, comment (a), p. 247 (1977). Significantly, however, the defendant has not argued that, under the circumstances of this case, this common-law privilege gave him absolute immunity from criminal liability under § 53a-183 (a) (2) as a matter of law. By focusing on the sufficiency of the evidence against him, the defendant implicitly has acknowledged that if a jury reasonably found that the mailings he sent to the victim contained *collateral* notations that would cause annoyance or alarm to "a person of common

intelligence" in light of "the underlying history between the parties," such mailings were not privileged.

Examination of the defendant's mailings to the victim reveals that none of them contained only civil pleadings. In each case, either on the envelope or on the enclosures or both, the defendant had added comments or messages that were not relevant to his civil suit against the victim.[4] Even though the messages were not threatening

---

[4] The first count of the information was based on an envelope with three biblical references, the name of the victim under one reference and the name of the defendant under another reference. The envelope also contained the phrase, "the store dream." Enclosed in the envelope were four documents: a handwritten "motion to revised" that referred to the victim as "always stubborn never willing to just communicate that to easy . . . So Let do it"; a handwritten memorandum in opposition to court delay with the word "bunny" next to the victim's name; a short calendar list form; and an unsigned appearance form.

The second count of the information was based on an envelope repeating one of the biblical references that contained a handwritten "Motion to Revise Complaint" that, among other representations, charged the victim with having "Broken promise And Commitment to family."

The third count of the information was based on an envelope stating, "You mislead me . . . over parties and drinking," as well as "legally only my Destiny is to have you speak the truth only. Even if take court a Life time . . . the State enable you" followed by two biblical references and the victim's first name. The envelope contained a motion "for Leadway in proving Defendant, Bare false wittness And Broken pledge" and an appearance form.

The fourth count of the information was based on an envelope addressed to "Att, Pro Se [victim's name]" that contained reference to two girls, pictures of a half-moon, rain and pork chops, and five stick figures near one of which was the legend "Life #5 gone Cause your drinking." The envelope contained a motion for contempt.

The fifth count of the information was based on an envelope with a number of statements on the back, including "[victim's first name] of the heart," "to Save A family" and "That All I have" as well as a drawn cross. Inside the envelope were a handwritten "Motion to enter as Co-plaintiff" identifying the victim as the plaintiff and a third party as the defendant, as well as an appearance form signed by the defendant.

The sixth count of the information was based on a mailing containing a death notice of the defendant's father. The defendant does not challenge his conviction on this count.

The seventh count of the information was based on a mailing containing two motions, one for judgment by default and the other for a garnishment hearing. The jury found the defendant not guilty on this count.

on their face, it was not unreasonable for the jury to find that their very ambiguity made it likely that they would have annoyed or alarmed the victim in light of the assaults to which the defendant recently had subjected her. On this record, we are unpersuaded by the defendant's claim of evidentiary insufficiency. "[I]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State* v. *Brown,* 235 Conn. 502, 510–11, 668 A.2d 1288 (1995).

## II

In the defendant's alternative claim for reversal of the judgment against him, he argues that, as applied to him, § 53a-183 is unconstitutionally vague.[5] Although this claim was not raised at trial, we agree with the defendant that it is reviewable under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989). On the merits, however, we agree with the state that the statute passes constitutional muster.

"A statute . . . [that] forbids or requires conduct in terms so vague that persons of common intelligence

The eighth count of the information was based on a mailing containing a handwritten list with signatures on the bottom. On the back, the defendant had written a note to the victim stating, "You knew we had an agreement, after put you out of house in front of the police for falsely calling the police on me. Sunday 4-8-2000 And because you threaten to ruin me . . . You are forgive, your forever in my Heart but God will punish you, for Your falsehoods."

The ninth count of the information was based on a mailing containing five documents. These included a "Happy Holidays" letter addressing the victim as "Bunny face," a purported "Bill of Labor of Love," another copy of the handwritten list referenced in the eighth count, and photographs of children at play, including the victim's children. The defendant does not challenge his conviction on this count.

[5] This court previously has held that § 53a-183 (a) (2) is not unconstitutionally vague on its face. *State* v. *Snyder,* 49 Conn. App. 617, 629, 717 A.2d 240 (1998).

must necessarily guess at its meaning and differ as to its application violates the first essential of due process. . . . Laws must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly. . . . A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to [him], the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." (Citation omitted; internal quotation marks omitted.) *State* v. *Scruggs*, 279 Conn. 698, 709–10, 905 A.2d 24 (2006).

The defendant argues that, as applied to the mailings that he sent to the victim, § 53a-183 (a) (2) is unconstitutionally vague for three reasons. He maintains that he reasonably believed that his conduct was lawful because (1) the victim filed a pro se appearance in response to his lawful civil suit, leading him to expect that she would respond to his subsequent civil pleadings, (2) at the time of the mailings, there no longer was an outstanding "no contact order" prohibiting him from sending legal pleadings to the victim and (3) no

one ever informed the defendant to stop sending legal pleadings to the victim. We are not persuaded.

We agree with the state that it was not reasonable for the defendant to infer from the victim's failure to object to his civil pleadings that she would not likely be alarmed or annoyed by the myriad of extraneous comments that he attached thereto. Similarly, we are not persuaded that it was reasonable for the defendant to infer consent from the victim's failure to renew a "no contact order" during his period of incarceration.

Furthermore, our conclusion that, under the circumstances of this case, the statute is constitutional, is buttressed by the fact that the defendant's conviction depended on proof by the state that the defendant sent mailings to the victim "with intent to harass, annoy or alarm" her. Numerous cases have held that "[u]nder appropriate circumstances, the presence of a specific intent element in the offense may purge a potentially vague criminal statute of constitutional infirmity." (Internal quotation marks omitted.) *State* v. *Payne*, 40 Conn. App. 1, 7, 669 A.2d 582 (1995), aff'd, 240 Conn. 766, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004); see also *State* v. *Schriver*, 207 Conn. 456, 460, 542 A.2d 686 (1988).

The defendant urges us to discount the significance of the specific intent requirement by hypothesizing that the jury improperly might have inferred that the *defendant* had the requisite intent from the victim's testimony that *she* felt harassed, alarmed and annoyed by any contact with the defendant. This argument fails for lack of a supporting record. In the absence of a copy of the jury instructions, we do not know what charge the trial court gave the jury with respect to proof of the specific intent requirement of the statute. Contrary to the defendant's hypothesis, we presume that the trial court, in

instructing the jury, undertook a proper analysis of the law and the facts. We do not presume error. *State* v. *Crumpton*, 202 Conn. 224, 231, 520 A.2d 226 (1987).

The judgment is affirmed.

In this opinion the other judges concurred.