### STATE OF CONNECTICUT *v.* VICTOR LUIS AYALA, SR.
### (AC 32800)

DiPentima, C. J., and Gruendel and Bishop, Js.

Argued December 5, 2011—officially released February 14, 2012

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Isabel Bussarakum*, law student intern, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Dinnan*, senior assistant state's attorney, for the appellee (state).

BISHOP, J. The defendant, Victor Luis Ayala, Sr., appeals from the judgment of conviction, rendered following a jury trial, of burglary in the second degree with a firearm in violation of General Statutes § 53a-102a (a), burglary in the first degree in violation of General Statutes § 53a-101 (a) (3), kidnapping in the second degree with a firearm in violation of General Statutes § 53a-94a (a), threatening in the second degree in violation of General Statutes § 53a-62 (a) (1) and interfering with an officer in violation of General Statutes § 53a-167a (a). On appeal, the defendant claims that (1) there was insufficient evidence from which the jury could have found beyond a reasonable doubt that he demonstrated the requisite intent to commit kidnapping and (2) § 53a-94a is unconstitutionally vague as applied to the present case. We disagree and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 4, 2007, the defendant twice visited the apartment of the victim and her husband.[1] On the first occasion, the defendant knocked on the door and the victim allowed him to enter and search her residence for his girlfriend. Later that night, the defendant returned to the victim's residence and, unbeknownst to her, waited outside, hidden from the view of the door's peephole, until the victim opened the door to get some air. When she opened the door, the defendant pushed his way into the apartment and stuck what she described as a black handgun[2] into her stomach, threatened to kill her and inquired about the whereabouts of his girlfriend. The victim informed the defendant that his girlfriend was not at her residence, at

---

[1] There were also two other individuals in the residence at the time of the defendant's unlawful entry.

[2] The defendant denied possessing a gun, and the police never recovered one.

which time the defendant pushed her and demanded that she sit on the couch. The defendant then searched the residence for his girlfriend, and when he was unable to find her, he left the residence.

The victim then called the police to report the incident. Special weapons and tactical unit members responded to the call and searched the victim's residence. Local patrol officers also arrived on the scene and questioned the victim about the defendant. She provided the officers with the defendant's name and his physical description. The victim also dictated and signed a statement for the police regarding the incident. The police then searched the vicinity for the defendant. After locating him, they conducted a one-on-one identification whereby the victim was asked to look at the defendant and determine if he was the person who committed the alleged crimes at her residence. The victim positively identified the defendant as the individual who had entered her residence that morning.

The defendant subsequently was arrested and charged in a six count information with burglary in the second degree with a firearm in violation of § 53a-102a (a), burglary in the first degree in violation of § 53a-101 (a) (3), kidnapping in the second degree with a firearm in violation of § 53a-94a (a), threatening in the second degree in violation of § 53a-62 (a) (1) and interfering with an officer in violation of § 53a-167a (a). After the defendant's arrest, the victim and her husband signed statements recanting their allegations against the defendant. When questioned at trial, however, they testified that they signed those statements due to pressure from the defendant's girlfriend and asserted that the victim's initial statement to the police and her husband's testimony at trial were the truthful account of the incident. After trial, the defendant was convicted on all counts and was sentenced to a total effective term of fourteen years of incarceration. This appeal followed.

I

On appeal, the defendant first claims that the evidence failed to demonstrate (1) that he had the requisite intent to prevent any person's liberation and (2) that he used restraint that was not incidental to the crime of burglary with a firearm. We disagree.

The standard of review for sufficiency of the evidence claims employs a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the *cumulative force of the evidence established guilt beyond a reasonable doubt.* . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517, 782 A.2d 658 (2001). "We do not sit as a [thirteenth] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record." (Internal quotation marks omitted.) *State* v. *Nicholson*, 71 Conn. App. 585, 590, 803 A.2d 391, cert. denied, 261 Conn. 941, 808 A.2d 1134 (2002).

A

The defendant first claims that the evidence presented at trial was insufficient to sustain the conviction for kidnapping in the second degree with a firearm. Specifically, the defendant claims that the state failed to prove beyond a reasonable doubt one of the elements of the crime, namely, that he had the specific intent to cause the result of preventing the victim's liberation. We disagree.

A discussion of the governing statutes and case law is useful to our analysis. Section 53a-94a (a) provides

that a person is guilty of kidnapping in the second degree with a firearm when, in the commission of kidnapping in the second degree, that person "uses or is armed with and threatens the use of or uses or displays or represents by his words or conduct that he possesses a pistol, revolver, machine gun, shotgun, rifle or other firearm." A person is guilty of kidnapping in the second degree when that person "abducts another person." General Statutes § 53a-94. To "abduct" another person is "to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation." General Statutes § 53a-91 (2).

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense[s], each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . [I]n determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . [A]n inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference." (Citation omitted; internal quotation marks omitted.) *State* v. *Fagan*, 92 Conn. App. 44, 49, 883 A.2d 8, cert. denied, 276 Conn. 924, 888 A.2d 91 (2005).

"It is well established that [t]he question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference

should be drawn is properly a question for the jury to decide." (Internal quotation marks omitted.) *State* v. *Watson*, 50 Conn. App. 591, 605, 718 A.2d 497, cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999), cert. dismissed, 255 Conn. 953, 772 A.2d 153 (2001).

"[I]ntent may be inferred from the events leading up to, and immediately following, the conduct in question . . . the accused's physical acts and the general surrounding circumstances. An accused's own words . . . constitute particularly compelling, direct evidence of his intent." (Citations omitted.) *State* v. *Winot*, 294 Conn. 753, 768, 988 A.2d 188 (2010).

On the basis of a thorough review of the evidence, we conclude that the jury could have found beyond a reasonable doubt that the defendant intended to prevent the victim's liberation even if only briefly. On the basis of the victim's testimony, the jury could have found that there was sufficient evidence that the defendant possessed the requisite intent in this regard.[3] The victim testified that as the defendant forced his way into her residence, he stuck a black handgun into her stomach and threatened her life. According to the victim, the defendant then ordered her to sit on the couch so that he could search the residence for his girlfriend. Although the defendant did not physically restrain the victim during her confinement, the jury reasonably could have inferred, in light of the defendant's immediately prior threat against her life while he allegedly was armed with a deadly weapon, that an implicit threat still existed at the time that he ordered her to sit on the couch. On the basis of this evidence, it was reasonable for the jury to infer from the defendant's conduct that he possessed the specific intent to prevent the victim's liberation.

---

[3] After being canvassed by the court, the defendant exercised his fifth amendment right not to testify.

## B

The defendant also claims that the evidence failed to demonstrate that his restraint of the victim was not incidental to the crime of burglary with a firearm so as to independently constitute the crime of kidnapping. We disagree.

We begin our analysis with a discussion of the governing statutes and case law. General Statutes § 53a-102 (a) provides: "A person is guilty of burglary in the second degree when such person enters or remains unlawfully in a dwelling, while a person other than a participant in the crime is actually present in such dwelling, with intent to commit a crime therein." Section 53a-102a (a) provides in relevant part: "A person is guilty of burglary in the second degree with a firearm when he commits burglary in the second degree as provided in section 53a-102, and in the commission of such offense he uses or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, rifle, shotgun, machine gun or other firearm. . . ."

Our Supreme Court has concluded that "a defendant may be convicted of both kidnapping and another substantive crime if, at any time prior to, during or after the commission of that other crime, the victim is moved or confined in a way that has independent criminal significance, that is, the victim was restrained to an extent exceeding that which was necessary to accomplish or complete the other crime." *State* v. *Salamon*, 287 Conn. 509, 547, 949 A.2d 1092 (2008). The "confinement, movement or detention" of another cannot be "merely incidental to the accompanying felony," but must be "significant enough, in and of itself, to warrant independent prosecution. . . . Whether the movement or confinement of the victim is merely incidental to and necessary for another crime will depend on the

particular facts and circumstances of each case. Consequently, when the evidence reasonably supports a finding that the restraint was *not* merely incidental to the commission of some other, separate crime, the ultimate factual determination must be made by the jury." (Citation omitted; emphasis in original; internal quotation marks omitted.) Id., 547–48.

In the case at hand, the jury heard evidence that the defendant forced his way into the victim's residence, pressed an object, which the victim described as a handgun, into her stomach and threatened to kill her. This conduct alone is sufficient to constitute the crime of burglary. This court has concluded that "the crime of burglary is complete once there has been an unlawful entering or remaining in a building with the intent to commit a crime in that building." *State* v. *Flowers*, 85 Conn. App. 681, 691, 858 A.2d 527 (2004), rev'd on other grounds, 278 Conn. 533, 898 A.2d 789 (2006). Although the long form information in the present case did not specify the crime that the defendant intended to commit within the victim's residence at the time of his unlawful entry, the state contended during its closing argument that such crimes were threatening, kidnapping or unlawful restraint.[4]

The jury reasonably could have concluded, therefore, that the burglary had been completed prior to the crime of kidnapping and that the kidnapping, which was initiated when the defendant pushed the victim and ordered her to sit on the couch so that he could search her residence, was not merely incidental to the burglary. Although the defendant did not physically restrain the victim, the jury reasonably could have concluded that the implicit threat against the victim's life constituted sufficient control over her movement to prevent her

---

[4] In his brief, the defendant does not challenge the state's claim regarding the underlying offense in connection with the kidnapping charge.

liberation. The jury reasonably could have concluded, as well, that such restraint was not necessary for the defendant to commit the burglary, nor was it inherent in the offense itself. In sum, viewing the evidence in a light most favorable to sustaining the conviction, the jury reasonably could have concluded that the defendant's restraint of the victim was not incidental to any other offense but was, rather, intended to prevent her from interfering while he searched her residence for his girlfriend. We conclude, therefore, in accordance with our Supreme Court's analysis in *State* v. *Salamon*, supra, 287 Conn. 546–50, that the kidnapping was neither incidental to the burglary, nor necessary for the defendant to complete the burglary. Rather, the restraint had its own criminal significance independent of the completed crime of burglary. See *State* v. *Golder*, 127 Conn. App. 181, 190–91, 14 A.3d 399, cert. denied, 301 Conn. 912, 19 A.3d 180 (2011).

## II

The defendant also claims that § 53a-94a is unconstitutionally vague as applied to the present case because it did not put the defendant on notice that any restraint of the victim, even for a very brief time, could constitute the crime of kidnapping. We disagree.

We begin with the applicable standard of review and general governing principles. The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review. *State* v. *Winot*, supra, 294 Conn. 758–59. In undertaking such review, we are mindful that "[a] statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . To demonstrate that [a statute] is unconstitutionally vague as applied to him, the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [he] had inadequate

notice of what was prohibited or that [he was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement." (Internal quotation marks omitted.) *Rocque* v. *Farricielli*, 269 Conn. 187, 204, 848 A.2d 1206 (2004).

"[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the [party] that his conduct is proscribed." *Hoffman Estates* v. *Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S. Ct. 1186, 71 L. Ed. 2d 362, reh. denied, 456 U.S. 950, 102 S. Ct. 2023, 72 L. Ed. 2d 476 (1982). In short, "where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law." *Screws* v. *United States*, 325 U.S. 91, 102, 65 S. Ct. 1031, 89 L. Ed. 1495 (1945); see also *Boyce Motor Lines, Inc.* v. *United States*, 342 U.S. 337, 342, 72 S. Ct. 329, 96 L. Ed. 367 (1952) ("requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of [a statute] would be so unfair that it must be held invalid").[5] When a jury evaluates evidence of a defendant's intent, it properly relies "on its common sense,

---

[5] Connecticut courts frequently have relied on this reasoning to reject vagueness challenges to statutes with specific intent requirements. See, e.g., *State* v. *Dyson*, 238 Conn. 784, 798–99, 680 A.2d 1306 (1996) (first degree kidnapping statute not unconstitutionally vague because it requires specific intent to terrorize); *State* v. *Cavallo*, 200 Conn. 664, 667–70, 513 A.2d 646 (1986) (statute disallowing tampering with witness not unconstitutionally vague because it requires specific intent to cause witness to testify falsely or to refrain from testifying at all); *State* v. *Adgers*, 101 Conn. App. 123, 132, 921 A.2d 122 (requirement in harassment statute that mailings be sent " 'with intent to harass, annoy or alarm' " victim buttressed conclusion that statute was not unconstitutionally vague), cert. denied, 283 Conn. 903, 927 A.2d 915 (2007).

experience and knowledge of human nature in drawing inferences and reaching conclusions of fact." *State* v. *Rodgers*, 198 Conn. 53, 59, 502 A.2d 360 (1985).

With respect to the defendant's claim regarding the relative brevity of the victim's restraint, we are mindful that our Supreme Court has indicated that there may be factual scenarios in which a kidnapping conviction would constitute an absurd and unconscionable result because of the limited duration of the confinement or the slight degree of restriction in movement. See *State* v. *Luurtsema*, 262 Conn. 179, 203–204, 811 A.2d 223 (2002), overruled in part on other grounds by *State* v. *Salamon*, 287 Conn. 509, 513–14, 949 A.2d 1092 (2008); accord *State* v. *Tweedy*, 219 Conn. 489, 503, 594 A.2d 906 (1991); see also *State* v. *Troupe*, 237 Conn. 284, 313–15, 677 A.2d 917 (1996). "As our case law interpreting those statutes has evolved, however, it is apparent that any such limitation on the reach of our kidnapping statutes is reserved for the rare factual scenario in which the restraint is so minimal that the statute would be unconstitutionally vague as applied to that scenario." *State* v. *Salamon*, supra, 528 n.17. On the basis of our review of the evidence, we conclude that the present case is not one of the rare cases where the restraint is so minimal or limited in time as to warrant a finding of unconstitutional vagueness.

Our Supreme Court's repeated pronouncements that there are no minimum time or distance requirements to establish a restraint within the meaning of the kidnapping statute; see, e.g., *State* v. *Winot*, supra, 294 Conn. 761–65; coupled with the statute's prohibition of the act of restraint only when it is accomplished with the specific intent of preventing a victim's liberation, defeats the defendant's claim that § 53a-94a is unconstitutionally vague as applied to his actions on November 4, 2007. Although the defendant's restraint of the victim was brief, when it is viewed in conjunction with the

evidence of his intent to prevent her liberation as discussed in part I B of this opinion, any argument that he was unaware of the criminality of his behavior must fail.

Further, any potential vagueness in § 53a-94a as applied to the defendant's conduct, standing alone, was counteracted by the evidence that he possessed the requisite specific intent to prevent the victim's liberation. The defendant's statements to the victim provided clear manifestations of the prohibited intent. Specifically, the defendant, while allegedly armed with a gun, told the victim that she was the "next to die." He then ordered her to sit on the couch while he searched her residence for his girlfriend. On the basis of the foregoing, a jury, applying its common sense and knowledge of human nature, reasonably could conclude that the defendant restrained the victim with the intent to prevent her liberation. Consequently, and based on all of the circumstances, the defendant cannot claim surprise that he would be arrested, prosecuted and convicted of the crime of kidnapping.

Finally, we note that our disposition of this matter is informed by the understanding that the fundamental purpose of the void for vagueness doctrine is to ensure fair warning in order to avoid traps for the innocent. The defendant has made no plausible argument, nor can we conceive of one, that on November 4, 2007, he acted in reliance on the belief that his conduct was lawful, or that a person of ordinary intelligence would have no reason to know that he was engaging in prohibited conduct. See *State* v. *Payne*, 240 Conn. 766, 779, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 269 Conn. 481, 490, 849 A.2d 760 (2004). On the basis of the foregoing analysis, we conclude that § 53a-94a, as applied to the defendant's conduct, is not unconstitutionally vague.

The judgment is affirmed.

In this opinion the other judges concurred.