## STATE OF CONNECTICUT *v.* PAUL CRNKOVIC
### (AC 21233)

Landau, Mihalakos and Daly, Js.

Argued December 3, 2001—officially released March 26, 2002

*Steven D. Jacobs*, for the appellant (defendant).

*Terri L. Sonnemann*, deputy assistant state's attorney, with whom were *Margaret Gaffney Radionovas*, assistant state's attorney, and, on the brief, *Michael Dearington*, state's attorney, and *Jeffrey G. Doskos*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Paul Crnkovic, appeals from the judgment of conviction, rendered after

a jury trial, of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-278 (b).[1] On appeal, the defendant claims that (1) the trial court improperly precluded from evidence an alternative reason for his flight, (2) the court improperly admitted into evidence the nature of his prior convictions for assault on a police officer and failure to appear, (3) the court improperly instructed the jury regarding consciousness of guilt and (4) the prosecutor engaged in misconduct that violated the defendant's constitutional right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 6, 1999, officers Wilfredo Cruz and Luis Rivera, members of the New Haven police department drug interdiction unit, were driving a marked police car near Davenport Avenue in New Haven. At approximately 8:17 p.m., Cruz observed a small red car stop at the side of the road at the intersection of West Street and Davenport Avenue. A man exited the vehicle and began walking toward the defendant, who was standing in front of his house on Davenport Avenue.

The defendant put his arm around the other man, and the two began walking along Davenport Avenue and onto West Street. At that time, Rivera turned his car around and followed the men as they walked. After seeing the defendant motion to his mouth and then to his waistband area, Cruz exited the patrol car and the defendant began to run toward Congress Avenue. Cruz began to chase the defendant on foot, and Rivera exited

---

[1] General Statutes § 21a-278 (b) provides in relevant part: "Any person who . . . possesses with the intent to sell or dispense . . . to another person any narcotic substance . . . and who is not at the time of such action a drug-dependent person, for a first offense shall be imprisoned not less than five years nor more than twenty years . . . . The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended . . . ."

the vehicle and followed. While the defendant was running through the courtyard of a housing complex, Cruz observed him throw something toward the ground. The defendant was apprehended when he slowed to a walk after crossing onto Bond Street.

After securing the defendant, the officers retraced the route of the previous foot chase back to the courtyard. Cruz found a plastic bag inside of which were twenty-three smaller, black plastic bags containing a substance that field tested positive for cocaine. The defendant's trial commenced on June 19, 2000. The jury returned a verdict of guilty, and the defendant received a total sentence of twenty years, of which five were mandatory. This appeal followed. Additional facts will be provided as necessary.

I

The defendant first claims that the court abused its discretion in precluding the defense from offering testimony about the basis for his fear of the police. Specifically, the defendant argues that (1) the basis for his fear was as relevant as the fear itself, and (2) the preclusion of testimony regarding the underlying facts and circumstances giving rise to his fear deprived him of his sixth amendment right to compulsory process and his fourteenth amendment right to present a defense. We disagree.

At the outset, we set forth our standard of review. "[T]he trial court's discretionary determination that the probative value of evidence is not outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation

omitted; internal quotation marks omitted.) *State* v. *Bush*, 249 Conn. 423, 430, 735 A.2d 778 (1999).

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree." (Internal quotation marks omitted.) *State* v. *Johnson*, 67 Conn. App. 299, 305–306, 786 A.2d 1269 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). "It is not logical relevance alone, however, that secures the admission of evidence. Logically relevant evidence must also be legally relevant . . . that is, not subject to exclusion for any one of the following prejudicial effects: (1) where the facts offered may unduly arouse the jury's emotions, hostility or sympathy, (2) *where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues*, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Joly*, 219 Conn. 234, 260–61, 593 A.2d 96 (1991).

At trial, the defendant offered the testimony of his mother to support his claim that he feared the police.[2]

---

[2] The following exchange occurred during the defendant's offer of proof:

"[Defense Counsel]: Mrs. Crnkovic, had you previous discussions with [the defendant] regarding the police?

"[Diavka Crnkovic]: Yes.

"Q: And what had he told you about the police?

"A: [The defendant] was beaten by the police many times. Even if you ask questions from his brother, he would tell—

"The Court: Sorry, he was what?

"[The Witness]: Beaten by the police.

"[Defense Counsel]: I'm showing you the defendant's exhibit B and C; do you recognize these?

"[The Witness]: Yes, I do.

"Q: What are they?

Specifically, during the defendant's offer of proof, Diavka Crnkovic testified regarding the circumstances under which the police allegedly had beaten her son during a prior, unrelated incident. The court ruled that she could testify only about her son's fear of the police, but not about the underlying circumstances.[3]

"A: That was my son's picture, [the defendant].

"Q: And they reflect injuries?

"A: Yes.

"Q: Who caused those injuries?

"A: The police.

"Q: When did that incident occur?

"A: That incident occurred—I'm not sure exactly, you know, but the lady [knocked] on my door and . . . [said], 'They're beating your son up in the street.' . . . That day he was beaten. They Maced him in the face.

"Q: After that incident, did [the defendant] express fear of the police?

"A: Yes. Yes.

"Q: What did he say?

"A: He said [he] was all the time afraid of them because they have the badge, you know. They have the power, and they jump on him, five [to] ten of them, and they also have more rights than he does."

[3] The following colloquy took place:

"The Court: And you have a hearsay statement to a mother that's being offered to negate the issue of [flight]. In order for the court to accept that proposition, the court would have to conclude that intent is a material issue in this case . . . . This is not the case.

"[Defense Counsel]: No, I don't think that is the case. I think as long as the state intends to offer consciousness of guilt evidence and [intends] to argue flight, consciousness of guilt, that puts that whole issue into play. And what [the defendant] was thinking or feeling or believing at the time he was being chased by the police officers is in play. . . . And I think we have the right to show—to let the jury know that there is another witness and that there may be an innocent reason that [the defendant] ran from the police, that he had had [a] prior, very negative experience with the police and wanted to get to a location where people could see him.

"[Prosecutor]: My concern, Your Honor, again, it's the same argument about the collateral nature; we're going to be trying a whole separate incident as to conclusions as to why a defendant would develop a fear.

"The Court: We're not going to do that. What the court will allow is the mother to testify that as a result of his involvement with the police, he was fearful of the police, and you want to use that to get in to argue—that's maybe one of the reasons he ran, fine, for the limited purpose of engaging consciousness of guilt. But to get the whole reliability of that, and the court does not see that as a material issue, and I think it would be what the prosecution said, a collateral matter, but to [that] extent the objection is

Our Supreme Court's decision in *State* v. *Joly*, supra, 219 Conn. 234, is binding on our disposition of the defendant's claim. In *Joly*, the defendant claimed that he was deprived of his right to present a defense by the "court's refusal to allow him to introduce circumstantial evidence of a beating that he allegedly had suffered at the hands of the Bristol police following his arrest for an unrelated incident . . . ." Id., 258. The defendant argued that the evidence relating to the alleged beating was necessary to rebut the state's argument that his lies and nervousness evidenced his consciousness of guilt. The Supreme Court concluded that "[d]ue to the prejudicial tendency of the defendant's evidence to divert the trial from its primary course and provoke a barrage of distracting counterproof . . . the trial court acted well within its discretion in excluding the evidence notwithstanding its logical relevance." Id., 262. Thus, in the present case, the defendant's argument also must fail.

The defendant argues that his flight from the police was essential to the case against him and that the justification for his flight was the cornerstone of his defense. That argument is misplaced. The defendant was convicted of possession of a narcotic substance with intent to sell in violation of § 21a-278 (b). To prove its case, the state must prove beyond a reasonable doubt that (1) the defendant possessed a substance, (2) the substance was a narcotic and (3) the defendant intended to sell it. Flight evidence demonstrating consciousness of guilt

---

sustained. To the extent that you are offering it to show there is another reason as to why he might have ran, that's allowed in itself and can be used to negate consciousness of guilt, to the extent that you wish to indicate that he was fearful as a result of prior involvements, but not to get into details.

\* \* \*

"The Court: The court's ruling is that the witness can testify that [the defendant] indicated to her [that] as a result of prior involvement with the police that he was fearful.

"[Prosecutor]: But without getting into the specifics of it.

"The Court: Right, that's the ruling."

does not bear on any of the essential elements of the crime with which the defendant was charged, and, therefore, it is a side issue. In addition, allowing Diavka Crnkovic to provide a factual basis for the defendant's fear of the police would shift the jury's attention from the trial of the defendant to a trial of the police department.

The proof of the alleged beating and the corresponding rebuttal evidence would have created a side issue that unduly distracted the jury from the main issues of the case. Accordingly, the court did not abuse its discretion by precluding testimony from Diavka Crnkovic about the underlying circumstances giving rise to the defendant's fear of the police.

II

The defendant next claims that the court abused its discretion in ruling that his prior conviction for assault of a police officer could be introduced into evidence as a named felony for purposes of impeachment. Specifically, he argues that the ruling deprived him of his constitutional right to present a defense because it effectively prevented him from testifying. Our Supreme Court's decision in *State* v. *Harrell*, 199 Conn. 255, 506 A.2d 1041 (1986), is dispositive of that issue.

As a preliminary matter, "evidence that a criminal defendant has been convicted of crimes on a prior occasion is not generally admissible." (Internal quotation marks omitted.) *State* v. *Jefferson*, 67 Conn. App. 249, 261, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002). "A trial court's decision denying a motion to exclude a witness' prior record, offered to attack his credibility, will be upset only if the court abused its discretion." (Internal quotation marks omitted.) *State* v. *Harrell*, supra, 199 Conn. 261. "The trial court must undertake a balancing test to determine if the probative value of the prior convictions outweighs

any prejudicial impact. This balancing of intangibles—probative values against probative dangers—is so much a matter where wise judges in particular situations may differ that a lee-way of discretion is generally recognized." (Internal quotation marks omitted.) Id., 262. With regard to the admission of prior convictions as named felonies, however, "to accomplish this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when . . . the defendant does not testify." (Internal quotation marks omitted.) Id., 266.

In *State* v. *Harrell*, supra, 199 Conn. 255, the defendant was convicted of burglary in the second degree with a firearm and attempt to commit robbery in the first degree. The trial court denied his motion in limine, which sought to prohibit the state from introducing into evidence his prior convictions for robbery, forgery and attempted false pretenses. The defendant chose not to testify. On appeal, he argued that because the court ruled that his prior convictions would be admissible as named felonies for impeachment purposes, he was prevented from exercising his fundamental right to present a defense. Our Supreme Court rejected the defendant's claim and followed the holding of *Luce* v. *United States*, 469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984), that to "raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." (Internal quotation marks omitted.) *State* v. *Harrell*, supra, 265–66.

In addition, the court noted that "[b]ecause an accused's decision whether to testify seldom turns on the resolution of one factor . . . a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." (Internal quotation marks omitted.) Id., 267, quoting *Luce* v. *United States*, supra, 469 U.S. 42. The court also recognized that "[a] defendant may decide not to take the witness stand because

of the risk of cross-examination. But this is a choice of litigation tactics." (Internal quotation marks omitted.) *State* v. *Harrell*, supra, 199 Conn. 264.

In the case at hand, the defendant filed a motion in limine requesting that the court prohibit the state from using for impeachment purposes his prior convictions in 1993 for possession of narcotics and in 1994 for assault of a police officer, sale of a hallucinogenic or narcotic substance, failure to appear and possession of narcotics. The court ruled that the state could present as named felonies the prior convictions for assault of a police officer and failure to appear, and that the remaining convictions would be unnamed felonies. The defendant did not testify. Because the defendant did not testify, his claim of improper impeachment by a prior conviction must fail.

## III

The defendant next claims that the court improperly instructed the jury regarding flight as evidence of consciousness of guilt.[4] Specifically, he argues that the court's instruction improperly directed the jury to infer guilt from the evidence of the defendant's flight and,

---

[4] The court instructed the jury in relevant part: "Now, I am going to talk to you about a principle; that principle is known as consciousness of guilt. It applies when a defendant does an act when one can infer that he has attempted to avoid the detection or avoid facts which could lead to his arrest or conviction. You may consider under this [principle] of law such evidence as consciousness of guilt, as such, in addition to circumstantial evidence of . . . flight, when unexplained tends to prove consciousness of guilt. The flight of a person accused of a crime is a circumstance which, when considered together with all the facts of the case, may justify a finding of the defendant's guilt. However, flight, if shown, is not conclusive. It is to be given the weight the jury says it is entitled to under the circumstances. Here, there was evidence that the defendant initially fled from the officers on the date of his arrest. *If you find that he was fleeing from the officers, you may consider it as evidence of his consciousness of guilt. It is upon you to give the evidence the weight to which you think it is entitled.*" (Emphasis added.)

therefore, effectively diluted the state's burden of proof.[5] We disagree.

"When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Citation omitted; internal quotation marks omitted.) *State* v. *Rodriguez*, 63 Conn. App. 529, 534, 777 A.2d 704, cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001).

"A jury charge in which the court removes from the jury's consideration an issue that is one of the essential elements of the crime, and thereby relieves the state of the burden of proving every element beyond a reasonable doubt" is improper. (Internal quotation marks omitted.) *State* v. *Washington*, 28 Conn. App. 369, 373, 610 A.2d 1332, cert. denied, 223 Conn. 926, 614 A.2d 829 (1992). "A proper instruction on flight as conscious-

[5] In addition, the defendant argues that the instruction effectively directed a finding as to his mental state, thereby relieving the state of its burden to prove an essential element of the crime. The defendant was convicted of possession with intent to sell a narcotic substance in violation of General Statutes § 21a-278 (b). As we stated previously in part I, the state must prove beyond a reasonable doubt that (1) the defendant possessed a substance, (2) the substance was a narcotic substance and (3) the defendant intended to sell it. We fail to see how an instruction regarding consciousness of guilt bears on any of the elements of the crime with which the defendant was charged.

ness of guilt, however, merely identifies a permissive inference that the jury might draw from the defendant's conduct." Id. A consciousness of guilt instruction is, therefore, not so directly related to an essential element of the crime that an improper flight instruction raises constitutional implications. See id.

If no constitutional issues are raised by the claim of an improper jury charge, as is the case here, we review the entire charge to determine whether the instructions are correct in law and whether they presented the case to the jury so that no injustice would result. *State* v. *Roman*, 67 Conn. App. 194, 204–205, 786 A.2d 1147 (2001), cert. granted on other grounds, 259 Conn. 920, 791 A.2d 567 (2002). "[T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Internal quotation marks omitted.) Id., 204.

Specifically, "[t]he decision whether to give an instruction on flight, as well as the content of such an instruction, if given, should be left to the sound discretion of the trial court." *State* v. *Hines*, 243 Conn. 796, 816, 709 A.2d 522 (1998). The instruction about flight that was given by the court correctly presented the law to the jury.[6]

"[F]light, when unexplained, tends to prove a consciousness of guilt. . . . Flight is a form of circumstantial evidence. Generally speaking, all that is required is that the evidence have relevance, and the fact that ambiguities or explanations may exist which tend to rebut an inference of guilt does not render evidence of

---

[6] See footnote 4.

flight inadmissible but simply constitutes a factor for the jury's consideration. . . . The fact that the evidence might support an innocent explanation as well as an inference of a consciousness of guilt does not make an instruction on flight erroneous. . . . Moreover, [t]he court was not required to enumerate all the possible innocent explanations offered by the defendant." (Internal quotation marks omitted.) *State* v. *Figueroa*, 257 Conn. 192, 196–97, 777 A.2d 587 (2001); *State* v. *Freeney*, 228 Conn. 582, 593–94, 637 A.2d 1088 (1994).

Turning to the case before us, the defendant ran from Cruz as soon as he exited the patrol car. In its charge, the court instructed the jury that it *may* consider the defendant's flight as evidence of his consciousness of guilt. Although the court could have referenced the defendant's fear of the police, the court was not required to do so. See *State* v. *Hines*, supra, 243 Conn. 813. We conclude that the court correctly instructed the jury in accordance with the law and did not abuse its discretion.

## IV

Finally, the defendant claims that the prosecutor engaged in misconduct during his summation and rebuttal argument to the jury. Specifically, he claims that the prosecutor improperly vouched for the credibility of the state's witnesses and otherwise expressed his personal opinions about the evidence.[7]

The defendant concedes that he did not properly preserve his claim for appeal. He seeks review under the doctrine set forth in *State* v. *Golding*, 213 Conn.

[7] The defendant also argues that the prosecutor improperly suggested to the jury that it must find that the police officers committed perjury to acquit the defendant. That claim is without merit. At no point during his summation or his rebuttal did the prosecutor directly or indirectly suggest that the jury must find that a witness committed perjury to acquit the defendant.

233, 239–40, 567 A.2d 823 (1989).[8] "It is well established that [w]e will not afford *Golding* review to [unpreserved] claims of prosecutorial misconduct where the record does not disclose a pattern of misconduct pervasive throughout the trial or conduct that was so blatantly egregious that it infringed on the defendant's right to a fair trial." (Internal quotation marks omitted.) *State* v. *Perry*, 58 Conn. App. 65, 69, 751 A.2d 843, cert. denied, 254 Conn. 914, 759 A.2d 508 (2000); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 12, p. 76 & (Sup. 2001) § 12, pp. 69, 82. We now review the closing arguments to determine if a pattern of misconduct existed or the conduct was so egregious as to infringe on the defendant's right to a fair trial.

"[P]rosecutorial misconduct can occur in the course of closing argument. . . . When presenting closing arguments, as in all facets of a criminal trial, the prosecutor, as a representative of the state, has a duty of fairness that exceeds that of other advocates." (Citations omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 336, 746 A.2d 761 (2000). "Nevertheless, [i]n addressing the jury, [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument. . . . Thus, the privilege of counsel in addressing the jury should not be too closely narrowed

---

[8] Under *State* v. *Golding*, supra, 213 Conn. 239–40, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.)

or unduly hampered . . . . Ultimately, therefore, the proper scope of closing argument lies within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) Id., 337.

Although a prosecutor is allowed latitude during closing argument, he cannot comment, directly or indirectly, as to the credibility, truth or veracity of witnesses. See *State* v. *Oehman*, 212 Conn. 325, 335–36, 562 A.2d 493 (1989). "The personal evaluations and opinions of trial counsel are at best boring irrelevancies and a distasteful cliche-type argument. At worst, they may be a vague form of unsworn and irrelevant testimony. . . . The fairness of the trial and not the culpability of the prosecutor is [however,] the standard for analyzing the constitutional due process claims of criminal defendants alleging prosecutorial misconduct. . . . Thus, improper summation results in a denial of due process when the improper statements cause substantial prejudice to the defendant." (Citations omitted; internal quotation marks omitted.) Id., 336.

In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, we consider several factors. "Included among those factors are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted; internal quotation marks omitted.) *State* v. *Whipper*, 258 Conn. 229, 262–63, 780 A.2d 53 (2001).

Our review of the record reveals that the prosecutor characterized the police officers as "credible," "forthright," "honest" and "not cagey." Although objectionable and improper, those comments were isolated and

did not constitute serious misconduct on the part of the prosecutor. In addition, the most blatant remarks were made during his rebuttal summation in direct response to the defendant's accusation that the officers had lied. Furthermore, those comments were not a reflection of a pattern of misconduct throughout the trial.

In addition, in its charge to the jury immediately following closing arguments, the court instructed the jury that the attorneys' arguments were not evidence and that the jurors' recollection of the facts, and not the attorneys' recitation, was controlling.[9] Because we conclude that the prosecutor's comments do not demonstrate a pattern of misconduct and that the prosecutor's conduct was not so egregious that it infringed on the defendant's right to a fair trial, we will not afford *Golding* review to the defendant's unpreserved claim.

The judgment is affirmed.

In this opinion DALY, J., concurred.

---

[9] The court instructed the jury in relevant part: "You are the sole judges of the facts. It is your duty to find the facts. You are to recollect and weigh the evidence and form your own conclusions as to what the ultimate facts are. You may not go outside the evidence introduced in court to find the facts. . . .

\* \* \*

"Now, the evidence from which you are to decide what the facts are consists of the sworn testimony of witnesses, both on direct and cross-examination, regardless of who called the witness, and the exhibits that have been received into evidence. In reaching your verdict, you should consider all the testimony and exhibits received into evidence. Certain things, however, are not evidence, and you may not consider them in deciding what the facts are. These include arguments and statements by lawyers. *The lawyers are not witnesses; what they have said in their closing arguments is intended to help you interpret the evidence, but is not evidence. If the facts, as you remember them, differ from the way the lawyers have stated them, it's your memory of them that controls.* The testimony that has been excluded or stricken is not evidence." (Emphasis added.)

LANDAU, J., concurring. I concur with the majority's result. I write separately, however, because I believe that the defendant's second claim is not reviewable, and we need proceed no further.

The defendant has a history of prior felony convictions. He therefore filed a motion asking the trial court to preclude the state during cross-examination from impeaching his credibility by offering evidence of his five felony convictions. The court denied the motion but limited the extent to which the state could use the prior convictions. The court would permit the state to name only two of the convictions, and the remainder would be referred to as unnamed felony convictions. The defendant asserts that, on the basis of the court's ruling, he elected not to testify on his own behalf. On appeal, he claims that the court deprived him of his constitutional right to testify.

"It is the defendant's burden to provide a record adequate to review any claim he seeks to raise on appeal. Practice Book § 61-10. When a defendant claims that a ruling of the trial court improperly restricted his freedom to choose whether to testify, a reviewing court can meaningfully gauge the validity of the claim only if the record shows what the substance of his testimony would have been." *State* v. *Hoffler*, 55 Conn. App. 210, 213, 738 A.2d 1145, cert. denied, 251 Conn. 923, 742 A.2d 360 (1999). "[A] defendant must testify to preserve for review any claims of improper impeachment by a prior conviction. *State* v. *Harrell*, 199 Conn. 255, 265–66, 506 A.2d 1041 (1986)." *State* v. *Hoffler*, supra, 213.

Here, the defendant did not testify. His claim on appeal therefore cannot be reached because there is no record.

For this reason, I respectfully concur in the majority's opinion.