******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ETHAN BOOK
(AC 35947)

Gruendel, Lavine and Keller, Js.

*Argued October 23, 2014—officially released March 3, 2015*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, geographical area number one, Povodator, J.)

*Ethan Book*, self-represented, the appellant (defendant).

*Lisa Herskowitz*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Mitchell Rubin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The self-represented defendant, Ethan Book, appeals from the judgment of conviction, rendered after a jury trial, of harassment in the second degree in violation of General Statutes § 53a-183 (a) (2). On appeal, the defendant claims that (1) § 53a-183 (a) (2) is unconstitutional, (2) there was insufficient evidence to support the conviction, (3) the court improperly failed to address pretrial motions, (4) the court improperly excluded evidence, (5) the court improperly denied the defendant's request for standby counsel, (6) the court erred by not bifurcating the trial to deal with the validity of the defendant's prior conviction, (7) the court erred by limiting the defendant's opening statement, (8) the court erred by rejecting the defendant's requests to charge the jury, (9) the court erred when it limited his closing arguments, and (10) the court erred when it instructed the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the late 1990s, the defendant and the complainant, Martha Villamil, met while operating similar businesses in Fairfield County. They later developed a personal relationship. After going on several dates, the complainant explained to the defendant that she did not want to see him anymore. The defendant nevertheless continued to contact the complainant, who ultimately filed a complaint with police. On the basis of that complaint, the defendant was charged with thirty-four counts of harassment in the second degree. In 2001, the defendant was found guilty on twenty-four of the counts and sentenced to five years imprisonment, execution suspended after one year, and one year of probation. As a condition of his probation, the defendant was to have no contact with the complainant.

In March, 2003, while incarcerated at the Bridgeport Correctional Center, the defendant sent a letter to the complainant, which she received and opened. She read a portion of the letter before becoming fearful and afraid. She then filed both a complaint with a victim's advocate, as well as a statement with the Stamford Police Department. As a result, the defendant was charged with two counts of harassment in the second degree in violation of § 53a-183 (a). The court later dismissed one of the counts on the ground that the charge was brought beyond the statute of limitations. In 2012, a trial proceeded on the remaining count, and the jury returned a guilty verdict. The court then sentenced the defendant to ninety days imprisonment, execution suspended after thirty days, followed by one year of probation. This appeal followed.

I

The defendant first claims that his conviction cannot stand because § 53a-183 (a) (2) is unconstitutional on

its face.[1] Specifically, he claims that the statute is overbroad because it prohibits certain forms of speech protected under the first amendment to the United States constitution. We disagree.

"The constitutionality of a statute presents a question of law over which our review is plenary. . . . It is well established that a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt . . . . The court will indulge in every presumption in favor of the statute's constitutionality . . . . Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Citation omitted; internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 500, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007), overruled in part on other grounds by *State* v. *Payne*, 303 Conn. 538, 548, 34 A.3d 370 (2012).

The defendant's claim that § 53a-183 (a) (2) is unconstitutional is not a novel one. On several prior occasions, our appellate courts have rejected first amendment challenges to the harassment statute. In each case, the court upheld the statute when it was applied to conduct, rather than speech. See *State* v. *Murphy*, 254 Conn. 561, 568, 757 A.2d 1125 (2000) ("§ 53a-183 [a] [2] proscribes harassing conduct via mail and does not seek to regulate the content of communications made by mail"); *State* v. *Bell*, 55 Conn. App. 475, 480–81, 739 A.2d 714 ("To run afoul of the statute, a telephone call must be made not merely to communicate, but with intent to harass, annoy or alarm and in a manner likely to cause annoyance or alarm. Whether speech actually occurs is irrelevant, since the statute proscribes conduct . . . ." [Internal quotation marks omitted.]), cert. denied, 252 Conn. 908, 743 A.2d 619 (1999); *State* v. *Anonymous (1978-4)*, 34 Conn. Supp. 689, 696, 389 A.2d 1270 (1978) ("it is the manner and means employed to communicate . . . rather than [the] content [of the messages]").[2] Most recently, in *State* v. *Moulton*, 310 Conn. 337, 362–63, 78 A.3d 55 (2013), our Supreme Court concluded that § 53a-183 (a) may be constitutionally applied to speech if the content of that speech rises to the level of a true threat, which is unprotected by the first amendment. In the present case, the defendant has articulated no reason to depart from prior case law, and as a result, we are bound by this precedent.[3] We therefore must reject the defendant's claim that the statute is unconstitutional.

## II

The defendant next claims that the evidence presented at trial was insufficient to support a determination of guilt beyond a reasonable doubt. We disagree.

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 246, 856 A.2d 917 (2004).

The information charged the defendant with harassment in the second degree in violation of § 53a-183 (a) (2). The statute provides in relevant part: "A person is guilty of harassment in the second degree when . . . with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail . . . (2) in a manner likely to cause annoyance or alarm . . . ." General Statutes § 53a-183 (a). The state was thus required to prove both that the defendant committed a physical act, i.e., sent a communication in a manner likely to cause annoyance or alarm, and had the applicable mental state, i.e., the specific intent to harass, annoy or alarm. In the present case, the defendant does not dispute that he sent the March, 2003 letter to the complainant.[4] He does however, contend that the letter was not sent in a manner likely to cause annoyance or alarm and that he lacked the requisite intent to harass when he mailed the letter.

At trial, the state prosecuted the defendant solely on the basis of his action in sending the letter, rather than on the contents of the communication, and the court charged the jury accordingly.[5] The court also instructed the jury, consistent with our state's law at the time, that the statute did not criminalize the content of the defendant's speech.[6] Although our Supreme Court in *State* v. *Moulton*, supra, 310 Conn. 337, construed the statute to encompass unprotected speech such as true threats, the present case was not tried on such a theory, nor was *Moulton* decided at the time of trial.[7] As a result, we review only the defendant's conduct in determining whether it was sufficient to support a conviction under

the harassment statute.

## A

We must first determine whether the defendant sent the letter "in a manner likely to cause annoyance or alarm." Our courts have concluded that it is the act of the communication and the circumstances surrounding that act, such as the time and the number of communications, that may be considered in determining whether the communication was made in a manner likely to cause annoyance or alarm. *State* v. *Moulton*, supra, 310 Conn. 357–58.

In reviewing the evidence, we conclude that the timing and surrounding circumstances support the jury's finding that the defendant's letter was likely to cause alarm or annoyance to the complainant. As discussed previously, the defendant mailed the letter to the woman who had been the complainant in his 2001 harassment case, where he had been convicted of twenty-four counts of harassment. He sent the letter in 2003 while serving a prison sentence following the 2001 convictions. Additionally, the defendant addressed the letter to the complainant, who had previously stated that she did not want to speak to him, had reported him to the police, and had testified against him at his 2001 trial. Given the timing and surrounding circumstances, it is reasonable for the jury to have found, beyond a reasonable doubt, that the single letter from the defendant would likely cause the complainant alarm or annoyance.

## B

We next look to whether the defendant sent the letter with the specific intent to harass, alarm or annoy. "Intent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Mejia*, 233 Conn. 215, 223, 658 A.2d 571 (1995). When a prosecutor seeks to prove the elements of § 53a-183 by way of the defendant's conduct, the fact finder "may consider the language used in the communication in determining . . . that the defendant intended to harass, annoy or alarm, and that he did so in a manner likely to cause annoyance or alarm." *State* v. *Murphy*, supra, 254 Conn. 569.

In reviewing the evidence, we conclude that the jury reasonably could have found, beyond a reasonable doubt, that the defendant had the requisite intent to harass, annoy, or alarm the complainant. The jury heard the complainant's testimony regarding her history with the defendant. She testified that prior to the 2001 harassment charges, she had asked the defendant several times to stop contacting her. She testified that the defen-

dant continued to call her and would often park his car in front of her house. She also explained that she had filed a complaint with the police and later testified against the defendant at his 2001 trial. Additionally, the defendant's 2003 letter was a full exhibit in evidence. Within the letter, the defendant admitted that the Stamford Police Department had told him that the complainant did not want to hear from him and that he should cease contact with her.[8] The letter also cites a passage from the Bible,[9] requests the complainant to recant her earlier statement to the police,[10] and makes reference to the well-being of her two children.[11] Finally, a transcript from the defendant's 2001 sentencing hearing was admitted as a full exhibit in evidence. At the hearing, a victim's advocate read a statement by the complainant expressing that she will "always be afraid of the defendant and live in constant fear that he will start harassing me again." (Internal quotation marks omitted.) At the conclusion of the hearing, the defendant was sentenced. As a condition of his probation, he was to have "no contact whatsoever with the victim . . . ." Given the cumulative impact of the testimony and exhibits, the jury could reasonably have found that the defendant sent the letter with the intent to harass or alarm the complainant. See *State* v. *Buhl*, 152 Conn. App. 140, 152, 100 A.3d 6 ("[o]n the issue of the defendant's intent . . . we must infer it from . . . the circumstances of [the mailing]" [internal quotation marks omitted]), cert. granted on other grounds, 314 Conn. 942, 103 A.3d 164 (2014); see also *State* v. *Cummings*, 46 Conn. App. 661, 673, 701 A.2d 663 ("[a]larm" defined as "to strike with fear: fill with anxiety as to threatening danger or harm" [internal quotation marks omitted]), cert. denied, 243 Conn. 940, 702 A.2d 645 (1997).

The defendant argues that he had "a well reasoned belief that [his] earlier convictions [were] invalid," that there were no court-ordered prohibitions against communication during the incarceration period, and that he contacted the complainant for a legitimate purpose. These claims have no merit. His belief regarding the validity of the 2001 conviction and the fact that there was no prohibition in place at the time are not dispositive on the issue of whether the communication was sent with the intent to harass, alarm or annoy the complainant. Last, the defendant's claim that he sent the letter for a legitimate purpose was properly before the jury, which was free to determine the credibility of that testimony. "[I]t is a jury's duty to determine the credibility of witnesses and to do so by observing firsthand their conduct, demeanor and attitude." *State* v. *Johnson*, 288 Conn. 236, 265, 951 A.2d 1257 (2008). The jury was free to accord little weight to the defendant's stated reason for sending the letter, given the contradictory evidence before it, such as the prior history of the parties, the contents and context of the letter, and the testimony of the complainant.

## III

The defendant next claims that the court erred in not ruling on various pretrial motions he filed. Specifically, the court did not address the defendant's request for disclosure, motion for a mistrial, motion to dismiss substitute information, supplement to motion for a mistrial, motion for reconsideration of court ruling to deny motion to dismiss, and motion for articulation. The defendant argues that by refusing to address these motions prior to trial, he was denied due process by the court. Due to the inadequate brief and record presented before us, we cannot review this claim on appeal.

"Although we are solicitous of the rights of [self-represented] litigants . . . [s]uch a litigant is bound by the same rules . . . and procedure as those qualified to practice law. . . . [W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . As this court has observed, [a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *Henderson* v. *State*, 151 Conn. App. 246, 262–63, 95 A.3d 1 (2014).

The defendant's brief lacks any authority for the proposition that the court was required to address all outstanding motions prior to the start of trial. His brief also lacks any authority that supports his claim that a failure to address a motion prior to trial constitutes a due process violation. Furthermore, the defendant fails to provide any analysis as to how, in this particular case, the court's refusal to rule on outstanding motions resulted in substantial prejudice to the defendant at trial. On the basis of the inadequate briefing of the issue, we deem this claim abandoned and decline to afford it review. See *Taylor* v. *Mucci*, 288 Conn. 379, 383 n.4, 952 A.2d 776 (2008); Practice Book § 67-4.

## IV

The defendant next claims that the court abused its discretion in determining certain evidence to be inadmissible. We disagree.

"The standard for review of evidentiary rulings is well established. [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Carpenter*, 275 Conn. 785, 815, 882 A.2d 604 (2005), cert. denied, 547 U.S. 1025, 126 S. Ct. 1578, 164 L. Ed. 2d 309 (2006).

The defendant first challenges the inadmissibility of a portion of his proffered trial testimony. At trial, the defendant read a prepared statement. The first sentence of his statement read, "[t]his matter deals with a charge of second degree harassment . . . a nonviolent class C misdemeanor." The court explained to the defendant that jurors are not usually told the grade of an offense, after which the defendant withdrew that portion of the statement. This claim has not been properly preserved, as the defendant did not object after the court provided an explanation for why the statement was inadmissible. See Practice Book § 60-5; *State* v. *Coleman*, 304 Conn. 161, 174, 37 A.3d 713 (2012) ("defendant must plainly put the trial court on notice as to the specific basis for his objection").

The defendant also claims that the court improperly determined the following evidence as inadmissible: a letter and telephone messages sent to the complainant by the defendant prior to the 2001 trial, a notice of appeal from the 2001 trial, and a letter the defendant sent to the complainant's attorney in March, 2003. First, the pre-2001 communications the defendant had with the complainant were properly excluded because they were relevant only to the prior matter, which had already reached a final judgment. See Conn. Code Evid. § 4-1 (defining relevant evidence as "evidence having any tendency to make the existence of any fact that *is material to the determination of the proceeding*" [emphasis added]). Second, the notice of appeal was properly excluded on the ground that it represented a "needless presentation of cumulative evidence." Conn. Code Evid. § 4-3. The defendant had already testified that he had appealed from the prior convictions, and the court found it unnecessary to admit the notice of appeal form. Finally, the defendant's letter to the complainant's attorney was properly excluded as hearsay. At trial, the defendant failed to meet his burden of establishing the admissibility of the evidence. *New England Savings Bank* v. *Bedford Realty Corp.*, 238 Conn. 745, 753, 680 A.2d 301 (1996) ("the burden is on the proponent of the evidence, upon timely objection, to establish that the evidence is admissible"). The court excluded the letter, but allowed the defendant to testify as to the contents of the letter, as well as the fact that it was mailed. Therefore, we do not conclude that the court abused its discretion when it made its evidentiary rulings.

V

The defendant next claims that the court abused its discretion when it denied his request for standby counsel. We disagree.

"[A] defendant does not have a state or federal constitutional right to standby counsel. . . . The standard of review to be applied when reviewing a denial of a

request for alternate counsel is whether the trial court abused its discretion in determining that a factual basis did not exist for granting the request. . . . The appointment of counsel is governed by Practice Book § 44-4, which provides that [w]hen a defendant has been permitted to proceed without the assistance of counsel, the judicial authority may appoint standby counsel, especially in cases expected to be long or complicated or in which there are multiple defendants. A public defender or special public defender may be appointed as standby counsel only if the defendant is indigent and qualifies for appointment of counsel under General Statutes § 51-296, except that in extraordinary circumstances the judicial authority, in its discretion, may appoint a special public defender for a defendant who is not indigent. [T]he applicant for public defender services bears the burden of proving indigency." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Guitard*, 61 Conn. App. 531, 535–37, 765 A.2d 30, cert. denied, 255 Conn. 952, 770 A.2d 32 (2001).

Under this legal standard, the court did not abuse its discretion in denying the defendant's request for standby counsel. The defendant made his first and only request for standby counsel at 10 a.m. on the morning evidence was to begin. In his oral request, the defendant presented no evidence that he was indigent other than the bare assertion that his "personal situation has since become much more depressed to where . . . [he believes he would] qualify for a public defender . . . ." As the defendant failed to meet the burden of proving his indigency, it was within the court's discretion to reject the request for standby counsel.

### VI

The defendant next claims that the court erred by not bifurcating the trial to deal with the "distinct issues of the validity of [his] 2001 conviction . . . ." This claim is without merit, as our courts recognize the well accepted principle that a court's jurisdiction terminates upon the beginning of a defendant's sentence. *State* v. *Ramos*, 306 Conn. 125, 135, 49 A.3d 197 (2012); see also *State* v. *Reid*, 277 Conn. 764, 775, 894 A.2d 963 (2006) (once defendant sentenced and custody transferred to penal institution, court's jurisdiction over that person terminates). At the time of trial, the defendant had been sentenced on his 2001 conviction. Consequently, the court had no subject matter jurisdiction, and therefore no power, to consider the prior conviction.

### VII

The defendant next claims that the court erred in limiting his opening statement. A criminal defendant, however, has no constitutional right to make an opening statement. Furthermore, "[i]n this state, we have not established by statute, rule or practice a procedure

which allows the defendant, in a criminal case, to make an opening statement to the jury. Nor has the right to make an opening statement been construed as one of constitutional proportions. The Constitution requires no more than that trials be fairly conducted and that guaranteed rights of defendants be scrupulously respected. . . . We believe that an opening statement by the defendant is not such a guaranteed right, and that the making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge." (Internal quotation marks omitted.) *State* v. *Ridley*, 7 Conn. App. 503, 505–506, 509 A.2d 546, cert. denied, 201 Conn. 803, 513 A.2d 698 (1986).

Under this standard, the court did not abuse its discretion when it limited the defendant's opening remarks. At trial, the court explained to the jury that the state and the defendant would make "extremely brief" opening statements "intended to be a very brief overview of the evidence they expect to offer." When the defendant began his opening remarks by stating, "I am sorry that you have to be here because this case never should have come to this," the court interrupted the defendant by stating, "Mr. Book, no. We are not going to—this is not a closing statement." The court reasonably could have anticipated that the defendant was about to present the jury with legal argument, rather than limiting his statements to an overview of the evidence he expected to present. As the court acted well within its discretion to limit the opening statements, it did not abuse that discretion when it restricted the defendant to the confines of those limitations.

### VIII

The defendant next claims that the court erred by rejecting his requests to charge the jury. Specifically, he argues that the jury instruction should have included instructions regarding various defenses. We disagree.

"We begin with the well established standard of review governing the defendant's challenge to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 454–55, 10 A.3d 942 (2011).

Our review of the record confirms that the jury instructions were correct in law and properly adapted to the issues in a manner sufficient to guide the jury. The court was not required to accept the defendant's requests to charge because his claims were not legally recognized defenses and were not supported by the evidence. "An instruction on a legally recognized theory of defense . . . is warranted only if the evidence indicates the availability of that defense." (Internal quotation marks omitted.) *State* v. *Vilchel,* 112 Conn. App. 411, 418, 963 A.2d 658, cert. denied, 291 Conn. 907, 969 A.2d 173 (2009).

IX

The defendant next claims that the court erred when it prohibited him from engaging in the following discussion in closing argument: claiming that the prosecutor had committed prosecutorial impropriety[12] and reading from a legal treatise that was not in evidence. We disagree.

"[T]he proper scope of closing argument lies within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Crnkovic,* 68 Conn. App. 757, 771, 793 A.2d 1139, cert. denied, 260 Conn. 925, 797 A.2d 521 (2002). "It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to prevent the jury from being influenced by improper matters that might prejudice its deliberations." (Internal quotation marks omitted.) *State* v. *Mungroo*, 104 Conn. App. 668, 677, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008).

During his closing argument, the defendant stated that "there certainly is indication of potential prosecutorial misconduct." The prosecutor immediately objected, and the court sustained the objection, explaining to the defendant that personal attacks on opposing counsel were not appropriate subject matter for final arguments. The court then explained to the defendant that he is limited to discussing facts that were supported by way of evidence presented or stipulated by the parties. The defendant later attempted to read a brief passage from a book called "Restoring the Lost Constitution." The court again interrupted him and stated that issues of a statute's constitutionality are not to be decided by the jury.

Our close review of the record confirms that the limitations placed on the scope of the defendant's closing arguments were proper. The defendant's bare allegations of prosecutorial impropriety amounted to an attack on opposing counsel, which the court may properly take steps to prevent. See *United States* v. *Young*, 470 U.S. 1, 9, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) ("[d]efense counsel, like his adversary, must not be

permitted to make unfounded and inflammatory attacks on the opposing advocate"). "[Counsel should] avoid arguments which are calculated to influence the passions or prejudices of the jury, or which would have the effect of diverting the jury's attention from [its] duty to decide the case on the evidence." (Internal quotation marks omitted.) *State* v. *Bova*, 240 Conn. 210, 243–44, 690 A.2d 1370 (1997). The defendant's attempt to read passages from a book that was not in evidence was also properly rejected. See *State* v. *Sweeney*, 104 Conn. App. 582, 598, 935 A.2d 178 (2007) ("[c]ounsel may not . . . comment on or suggest [in closing argument] an inference from facts not in evidence" [internal quotation marks omitted]). We conclude that the court did not abuse its discretion in limiting the scope of the defendant's closing argument.

X

The defendant next claims that the court erred in its instructions to the jury. We do not reach the merits of this claim because we conclude that the defendant has waived this claim.

"Whether a defendant waives the right to challenge jury instructions is a question of law over which we exercise plenary review." *State* v. *Davis*, 311 Conn. 468, 477, 88 A.3d 445 (2014). In *State* v. *Kitchens*, supra, 299 Conn. 482–83, our Supreme Court explained that "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." The doctrine of implied waiver is based on the "idea that counsel had sufficient notice of . . . the jury instructions and was aware of their content . . . ." (Emphasis omitted.) Id., 487 n.25.

On the morning of October 24, 2012, the court circulated revised copies of the proposed jury instructions. The court then explained the changes made to the instructions and allowed the state and the defendant time to comment. The defendant raised several concerns, including first amendment challenges, a defense of distress,[13] a defense of mistake of law, and the validity of his prior 2001 conviction. The court explained why each concern was not appropriate for a jury instruction. First, the court stated that the first amendment was not applicable to jury instructions because the harassment charge related to conduct rather than speech. Next, the court explained that distress is not a defense to a charge of harassment. The court also explained that ignorance or mistake of law are not a defense to criminal liability. Finally, the court concluded that it lacked jurisdiction to consider issues pertaining to the defendant's 2001

convictions. Before charging the jury, the court asked the defendant if there was "[a]nything preliminarily before we start the charge," to which the defendant responded "[n]o. . . . We're good as we can be." After the charge was read, the court again asked the defendant if he had any exceptions, and the defendant responded with, "[n]o exceptions." Here, the defendant was provided a copy of the instruction from the court, provided an opportunity to review it, allowed time to comment on the court's changes and revisions, and ultimately affirmatively accepted the instructions both before and after they were read to the jury. We therefore conclude that the defendant waived his claim of instructional error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 53a-183 (a) provides: "A person is guilty of harassment in the second degree when: (1) By telephone, he addresses another in or uses indecent or obscene language; or (2) with intent to harass, annoy or alarm another person, he communicates with a person by telegraph or mail, by electronically transmitting a facsimile through connection with a telephone network, by computer network, as defined in section 53a-250, or by any other form of written communication, in a manner likely to cause annoyance or alarm; or (3) with intent to harass, annoy or alarm another person, he makes a telephone call, whether or not a conversation ensues, in a manner likely to cause annoyance or alarm."

[2] We note that our Supreme Court in *State* v. *Moulton*, 310 Conn. 337, 362–63, 78 A.3d 55 (2013), overruled *Murphy*, *Bell* and *Anonymous (1978-4)*, to the extent that they held that § 53a-183 (a) proscribes only conduct and not offensive speech that is unprotected by the first amendment.

Because the defendant in this case was prosecuted only on the basis of his having sent the letter at issue to the complainant in 2003, unprotected speech is not at issue and, thus, we review only the defendant's conduct relative to § 53a-183 (a).

[3] The defendant offers two cases for the proposition that § 53a-183 (a) is unconstitutional. The first is *Vives* v. *City of New York*, 305 F. Supp. 2d 289 (S.D.N.Y. 2003), rev'd in part, 405 F.3d 115 (2d Cir. 2004), in which a federal District Court declared that a similar harassment statute in New York was declared unconstitutional. See also *People* v. *Golb*, 23 N.Y.3d 455, 15 N.E.3d 805, 991 N.Y.S.2d 792 (holding aggravated harassment statute in second degree as unconstitutionally vague and overly broad), cert. denied,      U.S.      (83 U.S.L.W. 3579, January 12, 2015). Although we acknowledge the reasoning of the New York state and federal courts, our Supreme Court has held that the state has a valid interest in protecting the privacy rights of the victims of harassment. "[T]he legislature had a compelling interest in protecting this state's citizenry from . . . fear and abuse . . . ." *State* v. *Moulton*, supra, 310 Conn. 360. The second case cited by the defendant is *Gormley* v. *Director, Connecticut State Dept. of Probation*, 632 F.2d 938 (2d Cir.), cert. denied, 449 U.S. 1023, 101 S. Ct. 591, 66 L. Ed. 2d 485 (1980). *Gormley*, however, directly contradicts the defendant's position by upholding the constitutionality of the Connecticut harassment statute on the basis that it was not overbroad. Id., 942.

[4] At trial, the defendant stated: "I sent the letter of which is offered into evidence to [the complainant]."

[5] The court charged the jury with the following instructions: "For you to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt.

"Element one, intent. The first element is that the defendant intended to harass, annoy or alarm another person. A person acts intentionally with respect to a result when his objective—when his conscious objective is to cause such result.

Harass means to trouble, worry or torment. Annoy means irritate, vex, bother as by repeated action. Alarm means to make suddenly afraid, anxious or frightened.

"Element two are written communications. The second element is that

the defendant sent a written communication to [the complainant] in a manner likely to cause annoyance or alarm. In this case, it is claimed that the written communication was sent through the mail.

"In summary, the state must prove beyond a reasonable doubt that the defendant intended to harass, annoy or alarm [the complainant] and by means of a written communication, he communicated with [the complainant] in a manner that was likely to cause annoyance or alarm.

"Now, there's a distinction that I must emphasize. The focus of the offense is not on the contents of the communication but, rather, the act of communicating. The statute does not attempt to regulate or criminalize the content."

[6] Until recently, our Supreme Court had consistently held that § 53a-183 (a) proscribed harassing conduct only. In *State* v. *Moulton*, supra, 310 Conn. 362, however, our Supreme Court construed the statute's application by concluding that "§ 53a-183 (a) proscribes harassing and alarming speech *as well as conduct.*" (Emphasis added.) The court held that "whenever the state relies on the content of a communication as substantive evidence of a violation of § 53a-183 (a)," the trial court "must instruct the jury on the difference between protected and unprotected speech . . . ." Id., 363. We recognize that *Moulton* overruled all prior cases to the extent that they prohibited the prosecution of second degree harassment on the basis of the content of the communication. But, when a defendant is prosecuted on the basis of his conduct only, our prior case law continues to govern.

[7] Although the court in *Moulton* construed the harassment statute to include unprotected speech, in part II B of the opinion it dismissed the defendant's harassment conviction on the ground that she "did not have fair warning that she could be prosecuted for a violation of [the statute] solely on the basis of the content of her speech." *State* v. *Moulton*, supra, 310 Conn. 366. As *Moulton* was decided on October 29, 2013, and the present case was tried before a jury on October 23, 2012, the defendant here was also not properly placed on notice of the change in the law.

[8] The defendant's letter stated, in part, the following: "Very quickly in the meeting, Sergeant Anthony Lupinacci told me *not to contact you again.* I asked why, explaining that you owed me money. He explained that you didn't want further communications from me." (Emphasis added.)

[9] The defendant cited Matthew 18:15-16 to support his position that "matters of relationship conflict" were a "legitimate purpose" for contacting the complainant.

[10] Within the defendant's letter, he asked the complainant the following: "would you either withdraw or amend your second statement to the police? In addition, was your first statement to the police all yours? In other words, might there have been some embellishments in your first statement which were suggested by the police?"

[11] The defendant's letter concludes with the following statement: "I trust that you, Lindsay and Matthew are fine. Sincerely, Ethan."

[12] On appeal, the defendant does not raise a claim of prosecutorial impropriety. He only claims that the court abused its discretion when it limited his ability to argue prosecutorial impropriety during closing arguments. Consequently, our review is limited to the claim presented.

[13] We note that although the defendant filed a written request to charge the jury on the defense of duress and cited General Statutes § 53a-14, during a colloquy with the court about the instruction, he claimed that he "was under distress, which is related to duress . . . ." The court rejected the defendant's proposed instruction as to distress, stating that it did not "see that as being a surrogate for duress."